1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11

ANN PHYLLIS HARPER,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security, [1]

                              Defendant.

Case No. 3:12-cv-05897-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

12
13
14
15
16
17
18

        Plaintiff has brought this matter for judicial review of defendant's denial of her

application for disability insurance benefits.  Pursuant to 28 U.S.C. § 636(c), Federal Rule of

Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard

by the undersigned Magistrate Judge.  After reviewing the parties' briefs and the remaining

record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny

benefits should be affirmed.

19

FACTUAL AND PROCEDURAL HISTORY

20
21
22
23
24

        On October 20, 2008, plaintiff filed an application for disability insurance benefits,

alleging disability as of November 7, 1999, due to neck, back and head injuries from a motor

vehicle accident. See ECF #10, Administrative Record ("AR") 21, 151.  That application was

denied upon initial administrative review on December 19, 2008, and on reconsideration on

25
26

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security
Administration.  Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for
Commissioner Michael J. Astrue as the Defendant in this suit.  **The Clerk of Court is directed to update the
docket accordingly.**

ORDER - 1

March 11, 2009. <u>See</u> AR 21.  A hearing was held before an administrative law judge ("ALJ") on July 8, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. <u>See</u> AR 36-70.

In a decision dated July 29, 2010, the ALJ determined plaintiff to be not disabled. <u>See</u> AR 21-30.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on August 10, 2012 making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). <u>See</u> AR 1; <u>see</u> also 20 C.F.R. § 404.981.  On October 8, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. <u>See</u> ECF #1.  The administrative record was filed with the Court on December 18, 2012. <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for further administrative proceedings because the ALJ erred: (1) in failing to incorporate into his assessment of plaintiff's residual functional capacity ("RFC") any limitations arising from the impairments the ALJ found to be "severe"; (2) in discounting plaintiff's credibility; and (3) in rejecting the lay witness evidence in the record.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds defendant's decision to deny benefits should be affirmed.  In addition, although plaintiff requests oral argument, the Court finds such argument to be unnecessary here.

<u>DISCUSSION</u>

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. <u>Hoffman v. Heckler,</u>

ORDER - 2

785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security

Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D.

Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

proper legal standards were not applied in weighing the evidence and making the decision.")

(citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

supported by inferences reasonably drawn from the record.").  "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported

by more than a scintilla of evidence, although less than a preponderance of the evidence is

required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "If the evidence

admits of more than one rational interpretation," the Commissioner's decision must be upheld.

Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

sufficient to support either outcome, we must affirm the decision actually made.") (quoting

Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [2]

I.       Plaintiff's Date Last Insured

To be entitled to disability insurance benefits, plaintiff "must establish that her disability

---

[2] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that
> which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
> substantial evidence, the courts are required to accept them.  It is the function of the
> [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
> not try the case de novo, neither may it abdicate its traditional function of review.  It must
> scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
> rational.  If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

existed on or before" the date her insured status expired. [3] Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  Plaintiff's date last insured was December 31, 2004. See AR 23.  Therefore, to be entitled to disability insurance benefits, plaintiff must establish she was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.  As explained further below, she has not done so.

II.      The ALJ's Step Two Determination and RFC Assessment

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." Id.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual['']s ability to work." SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841

---

[3] The Social Security Act provides in relevant part that "[e]very individual who . . . is insured for disability insurance benefits," who "has filed [an] application for disability insurance benefits" and "who is under a disability . . . , shall be entitled to" such benefits. 42 U.S.C. § 423(a).

F.2d 303, 306 (9th Cir.1988).  Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell, 161 F.3d at 601.  The above step two inquiry, however, is merely a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.  It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id.  However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id.  Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id.  In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

At step two in this case, the ALJ found plaintiff had severe impairments consisting of cervical sprains and strains and migraine headaches. See AR 23.  The ALJ then went on to find as well that plaintiff had the residual functional capacity to perform medium work. See AR 24. Plaintiff argues the ALJ erred in assessing his RFC by not including any functional limitations

ORDER - 5

1   stemming from the above severe impairments in that assessment.  Specifically, plaintiff asserts

2   that because the ALJ found those impairments to be severe, they necessarily significantly limit

3   his ability to perform basic work-related activities, and therefore the ALJ erred by not adopting

4   any functional limitations caused by those impairments.

5       Plaintiff, however, misapprehends the nature of the inquiry conducted at step two, and the

6   difference between that inquiry and the more detailed inquiry conducted in regard to determining

7   a claimant's residual functional capacity.  As noted above, the inquiry the ALJ conducts at step

8   two is merely a *de minimis* screening device used to dispose of groundless claims.  See Smolen,

9   80 F.3d at 1290.  It thus serves a wholly different purpose than the more detailed findings

10  required in determining the claimant's RFC at steps four and five. See 1996 WL 374184 *4

11  (noting that "the limitations identified [at step two] are not an RFC assessment but are used to

12  rate the severity of mental impairment(s) at [that step]," and that "[t]he mental RFC assessment

13  used at steps 4 and 5 . . . requires a more detailed assessment").  That is, when an impairment is

14  found to have had more than a minimal impact a claimant's ability to perform work activities at

15  step two, that finding merely serves to allow the claimant to continue in the sequential disability

16  evaluation process.

17      A step two finding, therefore, is not intended to indicate the much more specific level of

18  limitation that is required of the residual functional capacity assessment at step 4 and step 5, but

19  rather simply serves to get plaintiff there. See Bray v. Commissioner of Social Security Admin.,

20  554 F.3d 1219, 1228-29.[4]  Plaintiff asserts "[a] 'severe' impairment, or combination of

---

[4] In Bray the Ninth Circuit rejected a similar argument by the plaintiff in that case, noting that while she argued that "a severe impairment, by definition, inhibits a claimant from engaging in 'basic work activities,' and the ALJ's statement of her RFC does not capture that limitation," she offered "no authority to support the proposition that a severe mental impairment *must* correspond to limitations on a claimant's ability to perform basic work activities" in the claimant's RFC assessment. Id. (emphasis added).

ORDER - 6

impairments, is defined as one that significantly limits [a claimant's] physical or mental ability to

do basic work activities." ECF #15, p 3 (citing 20 C.F.R. § 404.1521).  But as pointed out by

defendant, the step two inquiry instead is phrased in terms of the lack of significant limitation,

that is an impairment or combination thereof "is *not* severe if it does *not* significantly limit [the

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a)

(emphasis added).  This focus on the lack of significant limitation as a basis for weeding out

groundless claims – as opposed to the later focus on those limitations that do have a significant

impact on the ability to perform basic work activities – also long has been recognized by the

Ninth Circuit.[5]  See Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) ("[I]ncluding a severity

inquiry at [step two] permits the [Commisioner] to identify efficiently those claimants whose

impairments are so slight that they are unlikely to be found disabled even if the individual's age,

education, and experience are considered.").

Plaintiff goes on to argue that her reports of pain and waxing and waning of symptoms,

as well as the clinical findings obtained by her physicians, support a more restrictive assessment

of her residual functional capacity than found by the ALJ.  But as noted by the ALJ, the objective

medical evidence in the record relating to the relevant period of time in this case – i.e., that prior

to plaintiff's date last insured – is sparse and shows fairly little in terms of significant findings

that would support the level of severe pain and limitation claimed by plaintiff. See AR 25-29;

211-13, 227-28, 415-16, 637-43, 648-49.  In addition, as discussed further below, the ALJ gave

valid reasons for finding plaintiff to be not fully credible concerning her subjective complaints.

Accordingly, the ALJ was not required to adopt any functional limitations based on plaintiff's

---

[5] It should be noted, furthermore, that the ALJ arguably did take into account the impact plaintiff's severe physical impairments had on his residual functional capacity.  This is because a restriction to medium work does constitute a limitation on the ability to perform work-related activities, and the two impairments the ALJ found to be severe are the only medically determinable impairments he determined plaintiff to have. See AR 24-25.

ORDER - 7

testimony or the self-reports she gave to treatment providers.[6]  Plaintiff also is incorrect in

asserting the ALJ did not discuss the impact of her reports of pain on her ability to function.

Contrary to plaintiff's assertion the ALJ did so, he just found the objective medical and other

evidence in the record did not support those reports.  See AR 25-29.

Plaintiff further takes issue with the ALJ's evaluation of some of that objective medical

evidence in the record.  The ALJ is responsible for determining credibility and resolving

ambiguities and conflicts in the medical evidence.  See Reddick v. Chater, 157 F.3d 715, 722 (9th

Cir. 1998).  Where the medical evidence in the record is not conclusive, "questions of credibility

and resolution of conflicts" are solely the functions of the ALJ.  Sample v. Schweiker, 694 F.2d

639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld."  Morgan v.

Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at

all) and whether certain factors are relevant to discount" the opinions of medical experts "falls

within this responsibility."  Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings

"must be supported by specific, cogent reasons."  Reddick, 157 F.3d at 725.  The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings."  Id.  The ALJ also may draw inferences

"logically flowing from the evidence."  Sample, 694 F.2d at 642.  Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion."  Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

---

[6] See Morgan, 169 F.3d at 601 (physician opinion premised to large extent on claimant's own accounts of symptoms and limitations may be disregarded where they have been properly discounted); Tonapetyan, 242 F.3d at 1149.

opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see also</u> <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001); <u>Matney on Behalf of Matney v. Sullivan</u>, 981 F.2d 1016, 1019 (9th Cir. 1992). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

In challenging the ALJ's evaluation of the medical opinion evidence, plaintiff first argues the ALJ erred in rejecting the opinion of the state agency non-examining, medical consultant that she was capable of performing light work. <u>See</u> AR 665-77. With respect to that opinion, the ALJ found in relevant part:

ORDER - 9

> . . . I do not find the State agency assessment persuasive in light of the medical evidence discussed above. The record clearly documents significant improvement in the claimant's condition prior to the date last insured, and by her own account, she had almost completely recovered. Moreover, the record does not contain objective findings that would support a limitation to light work. The assessment for medium work is more consistent with the objective findings and the claimant's documented reports and activities.

AR 29. Plaintiff characterizes these reasons as merely "general statements with no reference to specifics in the record." ECF #15, p. 8. But while the ALJ did not cite to specific portions of the record here, the ALJ's discussion follows immediately after his detailed summary of the medical and other evidence in the record, in which he does point out the specific evidence supporting his finding that plaintiff had greater functional capabilities than the medical consultant's conclusion indicates. See AR 25-28. Thus, the Court finds no error. See Magallanes, 881 F.2d at 755, (court may draw "specific and legitimate inferences from the ALJ's opinion").[7]

Plaintiff also points to evidence in the record indicating that certain forms of treatment were recommended for her physical impairments. See ECF #15, p. 8 (citing AR 211, 228). But the mere fact that treatment has been recommended – or even provided– does not alone indicate the presence of actual work-related limitations. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (mere existence of impairment is insufficient proof of disability). The Court rejects as well plaintiff's argument that the ALJ erred in failing to address the April 21, 2009 psychological evaluation report of Michael Boltwood, Ph.D.

Medical reports "containing observations made after the period for disability are relevant to assess the claimant's disability" during that period. Smith v. Bowen, 849 F.2d 1222, 1225 (9th

---

[7] For the same reasons, the Court rejects plaintiff's contention that the ALJ improperly acted as his own medical expert in rejecting the medical consultant's light work limitation. See Gonzalez Perez v. Secretary of Health and Human Services, 812 F.2d 747, 749 (1st Cir. 1987) (ALJ may not substitute own opinion for findings and opinion of physician); McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 799 (2nd Cir. 1983) (ALJ cannot arbitrarily substitute own judgment for competent medical opinion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) (ALJ should avoid commenting on meaning of objective medical findings without supporting medical expert testimony).

1    Cir. 1988); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975).  Because such medical

2    reports "are inevitably rendered retrospectively," therefore, they "should not be disregarded

3    solely on that basis." Smith, 849 F.2d at 1225 (citing Bilby v. Schweiker, 762 F.2d 716, 719 (9th

4    Cir. 1985)).  However, "claimants who apply for benefits for a current disability after the

5    expiration of their insured status" will be entitled thereto, only if they are able to show "the

6    current disability has existed continuously since a date on or before the date that their insurance

7    coverage lapsed." Flaten, 44 F.3d at 1462.

8

9           Plaintiff argues the content of Dr. Boltwood's report – which she asserts includes the

10   results of both a mental status examination and chronic pain diagnosis and indicates "that some

11   of her conditions have existed since childhood, likely accounting for the dysfunctional way she

12   has for dealing with pain" and "that she has taken a variety of medications" – "clearly reflects

13   long standing issues that, at a minimum, should have been addressed by the ALJ." ECF #15, pp.

14   8-9; see also AR 695-97.  The problem for plaintiff, however, is that not only are those portions

15   of Dr. Boltwood's report that focus on plaintiff's past history necessarily premised on her own

16   self-reporting, but the mental status examination results Dr. Boltwood obtained, the chronic pain

17   diagnosis he gave and his assessment of plaintiff's ability to function only concern her condition

18   at the time of the evaluation. See AR 695-97.  Thus, the ALJ did not err in failing to address Dr.

19   Boltwood's evaluation report, as the clinical findings contained therein do not relate back to the

20   relevant time period, and the ALJ was not required to accept the portion of that report that are

21   based on plaintiff's self-reports, given that the ALJ properly discounted her credibility regarding

22   her subjective complaints as discussed further below.

23

24

25   III.    The ALJ's Assessment of Plaintiff's Credibility

26          Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at

ORDER - 11

642 .  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at

580.  In addition, the Court may not reverse a credibility determination where that determination

is based on contradictory or ambiguous evidence. <u>See</u> <u>id.</u> at 579.  That some of the reasons for

discrediting a claimant's testimony should properly be discounted does not render the ALJ's

determination invalid, as long as that determination is supported by substantial evidence.

<u>Tonapetyan</u> , 242 F.3d at 1148.

       To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

reasons for the disbelief." <u>Lester</u>, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what

testimony is not credible and what evidence undermines the claimant's complaints." <u>Id.</u>; <u>see</u> <u>also</u>

<u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear

and convincing." <u>Lester</u>, 81 F.2d at 834.  The evidence as a whole must support a finding of

malingering. <u>See</u> <u>O'Donnell v. Barnhart</u>, 318 F.3d 811, 818 (8th Cir. 2003).

       In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

symptoms, and other testimony that "appears less than candid." <u>Smolen</u>, 80 F.3d at 1284.  The

ALJ also may consider a claimant's work record and observations of physicians and other third

parties regarding the nature, onset, duration, and frequency of symptoms. <u>See</u> <u>id.</u>

       The ALJ in this case discounted plaintiff's credibility in part because her allegations of

disabling pain were inconsistent with the medical evidence in the record, which showed little in

the way of objective clinical findings supportive thereof. <u>See</u> AR 25-29.  A determination that a

claimant's subjective complaints are "inconsistent with clinical observations" can satisfy the

clear and convincing requirement. <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297

ORDER - 12

(9th Cir. 1998).  While plaintiff argues the medical opinion evidence in the record supports her allegations, as discussed above such is not the case here.  Accordingly, the ALJ did not err in finding plaintiff to be not fully credible on this basis.

The ALJ also discounted plaintiff's credibility in part because she saw significant reductions in her pain before September 2001, "received little in the way of treatment" thereafter, and while she "experienced flares of her symptoms for which she intermittently participated in subsequent courses of physical therapy," each time it resulted in "significant improvement." AR 26; see also AR 25, 27-28.  The Court finds these to be valid reasons for discounting plaintiff's credibility.[8]  Although plaintiff asserts that "[i]f a temporary exacerbation interferes with an ability to attend work in sufficient degree, a clamant loses the ability to sustain work activity" (ECF #20, p. 5), the record fails to support a finding that the flares she experienced resulted in such an impact on her ability to work.

Plaintiff also contests the following reasons the ALJ gave for discounting her credibility:

As noted above, the record documents various activities that are not consistent with the claimant's allegations of debilitating symptoms and limitations.  The record shows that the claimant participated in activities including exercising at the gym regularly, ice skating, and skiing (Exs. 1F/2; 2F; 6F/20-21; 11F/35-36).  In addition, the claimant was a full-time stay-at-home mother to a young child, which entails certain physical demands.  The claimant's documented activities render her allegations less reliable.

AR 28.  The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

---

[8] See Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, serious medical treatment for supposedly excruciating pain); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony").

ORDER - 13

First, such activities can "meet the threshold for transferable work skills." Id.  Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.  Although plaintiff makes a general assertion that her daily activities do not provide a clear and convincing reason for discounting her credibility,[9] as the ALJ found the record indicates otherwise.  Specifically, the evidence – both from the period of time prior to her date last insured and that immediately subsequent thereto – indicates she engaged in strenuous activities at odds with her testimony that her physical impairments and limitations keep her from being able to perform all work. See, e.g., AR 356 ("She works, cares for her daughter. . . . She exercises six days a week in the gym. . . . She tends to be quite fit."); 415 ("She still enjoys skiing.").

Lastly, the ALJ found plaintiff to be not fully credible on the following basis:

. . . The claimant's testimony is not corroborated by the history that she provided to her health care providers during the relevant period of time, prior to the date last insured.  In addition, when the claimant was asked at the hearing to compare her condition prior to the 1999 motor vehicle accident and

---

[9] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 14

just before the 2006 accident, she could not do so; however, she was able, on questioning by her attorney, to talk about pain levels activity levels, etc. . . .

AR 28. These reasons for discounting plaintiff's credibility, neither of which she has specifically challenged, are legitimate as well. See Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements concerning symptoms and other testimony that "appears less than candid").

IV.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

With respect to the lay witness evidence in the record, the ALJ found as follows:

I have also considered [the] lay witness statements of record. The claimant's mother completed a statement in November 2009 in which she stated that prior to December 2004, the claimant had painful and limited range of motion in her neck while driving, doing household chores, and lifting her baby. The claimant's mother also said that the claimant had severe headaches and pain that impaired her concentration. She said that standing in one place caused back pain, walking was difficult, and sitting caused pain in her low back and right leg. She stated that the claimant was unable to do yard work or lift heavy items. The claimant's mother said that the claimant had been very limited in interacting with friends (Ex. 8E). The claimant's husband completed a statement in June 2010, when he stated that the claimant experiences severe neck pain aggravated by leaning forward, carrying relatively heavy items such as a gallon of milk; household chores including vacuuming or wiping counters; and activities that require looking down such as reading, writing, or typing. The claimant's husband stated that the claimant

1    could not sit for long periods or stand in one place without discomfort.  He
2    stated that the claimant needed help with housework and sometimes needed
     help with grocery shopping (Ex 32F).

3    The lay witness statements have been considered and are generally
4    corroborative of the claimant's allegations; however, they are not probative in
     terms of the ultimate issue of disability in light of the medical evidence and
5    other factors in this case.  The lay witnesses themselves are reliant to some
     extent upon the claimant's subjective reports of her impairments, which are
6    not fully supported by the record, as discussed above.  Further, the lay witness
     statements cannot outweigh the analysis of the objective medical evidence, as
7    well as the claimant's overall functional abilities.

8    AR 29.  Plaintiff argues the ALJ failed to properly consider the above lay witness statements

9

10   here.  The Court disagrees.

11        Although the undersigned agrees that it is not entirely clear as to exactly what extent the

12   lay witnesses relied on what plaintiff told them, it appears they relied on plaintiff's self-reporting

13   to at least some extent, particularly in regard to the level of pain plaintiff experienced and the

14   impact it had on her.  See AR 189-94, 1131-37.  To that extent then the ALJ did not err in

15   rejecting the lay witness statements on this basis, particularly in light of the lack of impropriety

16   in the ALJ's adverse credibility determination.  See Valentine v. Commissioner Social Security

17   Administration, 574 F.3d 685 (9th Cir. 2009).[10]  Plaintiff further argues the lay witnesses in this

18   case have had a greater opportunity to observe her then the medical professionals how examined

19   and treated her, and therefore their statements should be accorded greater weight.  But the Ninth

20

21   Circuit has held that an ALJ may discount lay testimony if it conflicts with the medical evidence

22

23   [10] In Valentine, the Ninth Circuit held in relevant part:

24        [The lay witness's] testimony of her husband's fatigue was similar to [the claimant's] own
          subjective complaints.  Unsurprisingly, the ALJ rejected this evidence based, at least in part,
25        on 'the same reasons [she] discounted [the claimant's] allegations.'  In light of our conclusion
          that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own
26        subjective complaints, and because the [lay witness's] testimony was similar to such
          complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.

Id. at 694.

ORDER - 16

1   in the record. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>see also</u> <u>Bayliss v. Barnhart</u>,

2   427 F.3d 1211, 1218 (9th Cir. 2005); <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984);

3   <u>but</u> <u>see</u> <u>Bruce v. Astrue</u>, 557 F.3d 1113 (9th Cir. 2009) (improper for ALJ to discredit testimony

4   of claimant's wife as not supported by medical evidence in record).[11]

5       Finally, the ALJ properly rejected the lay witness evidence in the record on the basis that

6   it conflicted with plaintiff's "overall functional abilities" (AR 29), which as discussed above is

7   evidenced in part by the type of activities she has engaged in indicating greater functional

8

9   _____

10  [11] In so holding, the Ninth Circuit in <u>Bruce</u> relied on its prior decision in <u>Smolen</u>, which held that the ALJ
    improperly rejected the testimony of the claimant's family on the basis that medical records did not corroborate the
    claimant's symptoms, because in so doing the ALJ violated the Commissioner's directive "to consider the testimony

11  of lay witnesses where the claimant's alleged symptoms are *unsupported* by her medical records." <u>Bruce</u>, 557 .3d at
    1116 (citing 80 F.3d at 1289) (emphasis in original). The Court of Appeals, however, did not address its earlier

12  decisions in <u>Bayliss</u>, <u>Lewis</u> and <u>Vincent</u>, in which, as discussed above, it expressly held that "[o]ne reason for which
    an ALJ may discount lay testimony is that it conflicts with medical evidence." <u>Lewis</u>, 236 F.3d at 511 (citing

13  <u>Vincent</u>, 739 F.2d at 1995); <u>see also</u> <u>Bayliss</u>, 427 F.3d at 1218. Accordingly, although <u>Bruce</u> is the Ninth Circuit's
    most recent pronouncement on this issue, given that no mention of <u>Bayliss</u>, <u>Lewis</u> or <u>Vincent</u> was made in that case,

14  and that none of the holdings in those earlier decisions concerning this issue were expressly reversed, it is not at all
    clear whether discounting lay witness evidence on the basis that it is not supported by the objective medical

15  evidence in the record is no longer allowed.  [Plaintiff, though, has not challenged this basis for discounting
    plaintiff's mother's statement.  Accordingly, the undersigned shall treat those earlier holdings as being still good

16  law.] [In addition, the undersigned agrees with the reasoning employed by United States Magistrate Judge Mary
    Alice Theiler to distinguish <u>Bruce</u> in a recent case:

17
            As asserted by [defendant], the Ninth Circuit's decision in *Bruce* can be distinguished.  In that
18          case, the Court rejected as improper the ALJ's reasoning that the lay testimony was "not
            supported by the objective medical evidence." 557 F.3d at 1116. The ALJ in *Bruce* did not
19          point to any specific evidence, contradictory or otherwise, in support of this conclusion.
            Instead, the ALJ *appeared to discount in general the value of lay testimony in comparison to*
20          *objective medical evidence*. *Smolen*, cited in *Bruce*, can be similarly distinguished. In that
            case, the Court noted that the claimant's disability was based on fatigue and pain, that the
21          medical records were "sparse" and did not "provide adequate documentation of those
            symptoms[,]" and that . . . the ALJ was consequently required to consider the lay testimony as
22          to those symptoms. 80 F.3d at 1288-89.  The ALJ in *Smolen*, therefore, had erred in rejecting
            the lay testimony because " 'medical records, including chart notes made at the time, are far
23          more reliable and entitled to more weight than recent recollections made by family members
            and others, made with a view toward helping their sibling in pending litigation.' " *Id.* at 1289.
24          As in *Bruce*, the ALJ *essentially rejected the value of lay testimony as compared to objective*
            *medical evidence*.

25  <u>Staley v. Astrue</u>, 2010 WL 3230818 * (W.D. Wash. 2010) (emphasis added).  Likewise, here the ALJ discounted the

26  lay witness statements because of their inconsistency with other evidence in the record, including the objective
    medical evidence discussed herein, and not because he found in general the evidentiary value of such statements to
    be less than that provided by the objective medical evidence.

capacity than alleged. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (rejection of lay witness evidence due to inconsistency with claimant's successful completion of continuous full-time coursework constitutes reason germane to lay witness).  The ALJ thus provided valid reasons for rejecting the lay witness evidence in this case.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 4th day of October, 2013.


Karen L. Strombom
United States Magistrate Judge

ORDER - 18